```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6-11-10
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
UNITED STATES OF AMERICA,

    - against -                                  08 Cr. 384 (DAB)
                                                          MEMORANDUM & ORDER

JOSEPH F. MUTO,

                                Defendant.
------------------------------------X

DEBORAH A. BATTS, United States District Judge.

    Defendant Joseph Muto, a former attorney who was disbarred in 2002, moves to vacate his guilty plea of November 10, 2009, arguing that his allocution before the Court on that date did not provide a sufficient factual basis for the plea. For the following reasons, Defendant's Motion is DENIED.

## I. BACKGROUND

    On April 30, 2008, the Government filed the Indictment in this matter, charging Defendant Joseph Muto with three counts of making false statements to the United States Court of Appeals for the Second Circuit under 18 U.S.C. § 1001 and aiding and abetting the making of false statements under 18 U.S.C. § 2.

    Upon the Defendant's request that he be permitted to proceed pro se, on September 18, 2009 the Court referred this matter to the Honorable Frank Maas for a hearing to determine whether the Defendant was knowingly and voluntarily waiving his right to counsel under Faretta v. California, 422 U.S. 806 (1975). On

October 20, 2009 the Court accepted the findings of Magistrate Judge Maas, determined that Defendant Muto had knowingly and voluntarily waived his right to counsel, and granted Defendant Muto's request to proceed pro se.

On November 10, 2009, before this Court, the Defendant allocuted and pled guilty to Count One of the Indictment. The Court set March 8, 2010 as the date for sentencing. On March 3, 2010, the Court granted Defendant Muto's request for an adjournment of the sentencing date to permit him additional time to file a sentencing submission in response to the Government's sentencing submission. On March 30, 2010, the Court received Defendant Muto's instant Motion to Vacate Guilty Plea.

## II. DISCUSSION

A. Legal Standard for Withdrawing a Plea

Under Rule 11 of the Federal Rules of Criminal Procedure, a Defendant may "withdraw his plea anytime before sentence is imposed if he can show a fair and just reason for requesting the withdrawal." United States v. Doe, 537 F.3d 204,210 (2d Cir. 2008) (quoting Rule 11(d)(2)(b)). A "defendant who seeks to withdraw his plea bears the burden of satisfying the trial judge that there are valid grounds for withdrawal." Id. (quoting United States v. Gonzalez, 970 F.2d 1095, 1100 (2d Cir. 1992)).

2

"In general, to determine whether the defendant has shown a 'fair and just reason' to justify withdrawal, a district court considers, <u>inter alia</u>: (1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion . . . ; (3) whether the government would be prejudiced by a withdrawal of the plea;" and (4) "whether the defendant has raised a significant question about the voluntariness of the original plea." <u>United Stats v. Schmidt</u>, 373 F.3d 100, 102-03 (2d Cir. 2004). However, "[a] defendant does not enjoy an unfettered right to withdraw his guilty plea" and "the government need not demonstrate prejudice where the defendant fails to show sufficient grounds to justify withdrawal of the plea." <u>United States v. Fernandez-Antonia</u>, 278 F.3d 150, 155 (2d Cir. 2002) (internal quotations and citations omitted)).

Further, a Defendant's "self-inculpatory statements . . . made under oath at his plea allocution carry a strong presumption of verity and the court, in reviewing . . . belated claims of innocence, must draw all permissible inferences in favor of the government and against the defendant." <u>United States v. Couto</u>, 311 F.3d 179, 186 (2d Cir. 2002) (quoting <u>United States v. Maher</u>, 108 F.3d 1513, 1530 (2d Cir. 1997)).

B.   The Factual Basis Requirement

Here, Defendant Muto contends under Rule 11(b)(3) of the Federal Rules of Criminal Procedure that "the defendant did not state a sufficient basis for his plea." (Def's Motion To Vacate, 1.) "Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Rule 11(b)(3); see also United States v. Garcia, 587 F.3d 509, 510 (2d Cir. 2009) (explaining that the Rule 11 requirement "is designed to protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge") (internal quotations omitted).

"In making that determination, the court is not limited to an examination of the defendant's plea allocution, but may look more broadly to any facts on the record at the time of the plea proceeding" and the "overarching requirement is that the court assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." United States v. Garcia, 587 F.3d 509, 514 (2d Cir. 2009).

C.   The Criminal Offense to which the Defendant Pled

18 U.S.C. § 1001 provides that, with certain exceptions not

present here:

> whoever, in any matter within the jurisdiction of the . . . judicial branch of the Government of the United States, knowingly and willfully – (1) falsifies, conceals, or covers up by an trick, scheme or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; shall be fined under this title [and] imprisoned not more than 5 years . . . .

Accordingly, an individual is guilty of a Section 1001 offense when he: (1) falsifies or conceals a fact, makes a false, fictitious or fraudulent statement, or makes or uses any false writing or document that contains such a statement; (2) the fact or statement is material; (3) he does so knowingly and willfully; (4) and he does so "in any matter within the jurisdiction of the . . . . judicial branch of the Government of the United States." See, e.g., United States v. Ballistrea, 101 F.3d 827, (2d Cir. 1996).

Further, under 18 U.S.C. § 2, one who "aids, abets, counsels, commands, induces or procedures the commission of an offense is punishable as a principal." "To convict a defendant on a theory of aiding and abetting, the government must prove that the underlying crime was committed by a person other than the defendant and that the defendant acted, or failed to act in a way that the law required him to act, with the specific purpose

of bringing about the underlying crime." <u>United States v. Sabhnani</u>, 599 F.3d 215, 237 (2d Cir. 2010) (quoting <u>Unite States v. Labat</u>, 905 F.2d 18, 23 (2d Cir. 1990)).

D.  The Defendant's Plea

    1.  Using a False Writing or Document

The Defendant's allocution provides a sufficient factual basis to find that he committed the underlying crime under 18 U.S.C. § 1001(a)(3). The Defendant allocuted that he knowingly and willfully accepted money for writing the briefs <u>after</u> he knew that his spouse had signed a fictitious name to the briefs. (<u>See</u> Nov. 10, 2009 Tr. 14: 15-17) ("Karen['s] paralegal Gene, came to our home. And as agents[1] occasionally do, he mistook my wife's name Cheryl for Sharon, and more or less suggested, and I went along with this. I am guilty of this crime. I should have just thrown [Gene] out, but <u>we needed the money</u> very desperately, your Honor. And that's why I did this.") (emphasis added); (Nov. 10, 2009 Tr. 16: 12-14) ("I wished Mr. Rathkin could have signed off on the briefs, but he would not do so. So, <u>to come up with a way</u>

---

[1] On page 3 of its Opposition Memorandum, the Government quotes the transcript by substituting the word "asians" for the word "agents" in line 13 of page 14. However, the Government has not provided a basis for the Court to believe that the transcript is incorrect, nor is the matter ultimately relevant to the question at issue.

6

to get paid, I could help my wife keep her home.") (emphasis added).

Under the ordinary and plain meaning of § 1001(a)(3)'s language, there is a sufficient factual basis on the record to find that the Defendant "use[d]" a "false writing or document" before the Second Circuit by accepting compensation for drafting that document when he knew that it contained a "materially false, fictitious, or fraudulent statement." (emphasis added).

2. Aiding and Abetting the Making of False Statements

Further, the Defendant's allocution also provides a factual basis to find that he aided and abetted the making of false statements to the Second Circuit. Here, Defendant Muto argues that although he allocuted that he "did not prevent Gene and Karen Jaffe from using the [fictitious] name Sharon Marshall" on the briefs, he had nonetheless "drafted the appeals well before Gene suggested to defendant's spouse the usage of a bogus name on the briefs," and is therefore innocent of aiding and abetting the making of false statements because he did not "act in a way to bring about the success of the criminal venture." (Def's Motion to Vacate, 2.) Thus, Defendant Muto contends that it was his spouse Sheryl who ultimately signed the fictitious name to the briefs. See (Def's Motion to Vacate, 2) ("Defendant concededly

7

had drafted the appeals well before Gene suggested to <u>defendant's spouse</u> the usage of a bogus name on the briefs.") (emphasis added); (Def's March 27, 2010 Brief, 17) ("After defendant completed the briefs, Gene came to defendant's residence . . . Gene suggested that [Defendant's wife] <u>Sheryl</u>, using the name Sharon Marshall, sign off on the briefs.") (emphasis added).

However, although Defendant Muto never allocuted that he personally signed the name Sharon Marshall on the briefs, his claim that he was an entirely passive bystander is belied by his statement that "I should have just thrown him out, but <u>we needed the money</u> very desperately, your Honor. And that's why <u>I did this</u>." (Nov. 10, 2009 Tr. 14: 15-17) (emphasis added). Then, in response to the Court's question "did you know that what you were <u>doing</u> was wrong and illegal?" the Defendant replied: "I admit <u>doing it</u>, your Honor . . . I knew that <u>using</u> the name Sharon Marshall and <u>going along with that</u> was illegal, your Honor, yes." (Nov. 10, 2009 Tr. 16: 5-12) (emphasis added). Drawing all permissible inferences in favor of the Government and against the Defendant, as it must, the Court finds that the Defendant provided the Court with an adequate factual basis for it to conclude that the Defendant knowingly acted in furtherance of filing the briefs containing the false statements.

Moreover, Defendant Muto's contention that he decided to

seek withdrawal of his plea agreement only because he later "was apprised that the conduct which he engaged in and admitted to at his plea allocution did not constitute a crime as a matter of law" is not credible. (Def's Reply Brief, 7.) During his allocution, the Defendant stated that before writing the appeals briefs, he "checked with an attorney in Pennsylvania to see if it was illegal for me to write these appeals." (Nov. 10, 2009 Tr. 14: 7-8.) Thus, clearly the Defendant was aware, at the time of his plea allocution, that merely writing the appeals briefs was not a crime. Accordingly, when he stated on the record that he was "guilty of this crime" because he "went along with this," (Nov. 10, 2009 Tr. 14: 5-12), it could not plausibly have been because he mistakenly believed that the mere writing of the briefs, without something more, made him culpable. Rather, the Defendant, who was not only a former criminal defense lawyer himself, but had been advised by an attorney that merely writing the briefs was not a crime, knew that some further action on his part was required to make him culpable for the filing of the false statements.

Indeed, the Court finds that the Defendant's change of heart was motivated by his desire to continue his current public employment, as evidenced by his email to the Government, dated November 5, 2009, in which he asked for a deferred prosecution

agreement and explained that he would be barred from public employment after a felony conviction.

E.   Consideration of the Factors

The Defendant now asserts his legal innocence, which is one of the factors that the Court should consider in determining whether a Defendant may withdraw a guilty plea before sentencing. However, all of the remaining factors weigh against a finding that there is a 'fair and just reason' to justify withdrawal of the guilty plea. First, the Defendant did not assert his innocence until March 30, 2010, nearly five months after his November 10, 2009 plea. Other courts have found such a delay to undermine the credibility of a Defendant's assertion of innocence. United States v. Doe, 537 F.3d 204, 213 (2d Cir. 2008) (Defendant who "waited nearly five months after entering his plea to move to withdraw it, undercut[] his claim that the plea" was undertaken involuntarily ); United States v. Kahn, 328 Fed. Appx. 704, 707 (2d Cir. 2009) ("the fact that the defendant waited almost five months from the date of his plea before raising any objection strongly supports . . . that his plea was entered voluntarily.") (internal quotations omitted). Further, because the Defendant's asserted basis for the delay is not credible, as explained supra, Section D(2), it does not affect

10

the Court's finding that the nearly five-month delay undermines the Defendant's credibility.

This conclusion is further strengthened by the fact that the Defendant did not assert his innocence until after he received the Probation Department's February 19, 2010 Pre-sentence Report, recommending a sentence of two years probation, and the revised March 2, 2010 Pre-sentence Report recommending the same.

Moreover, while the Government has not asserted that it would be prejudiced by the withdrawal of the plea, "the government need not demonstrate prejudice where the defendant fails to show sufficient grounds to justify withdrawal of the plea." United States v. Fernandez-Antonia, 278 F.3d 150, 155 (2d Cir. 2002) (internal quotations and citations omitted)). Indeed, the Defendant's failure to demonstrate sufficient grounds to justify withdrawal of the plea, as explained supra, Section D, overwhelmingly supports the Court's overall finding that the Defendant has not provided a fair and just reason' to justify withdrawal of the guilty plea.

Finally, the Defendant has not demonstrated that his guilty plea was somehow involuntary. During his plea, the Court questioned the Defendant extensively to determine that he was fully competent to enter an informed plea, (Nov. 10, 2009 Tr. 4:1 - 5:8), that he understood the rights he was waiving under the

Constitution and laws of the United States, (Nov. 10, 2009 Tr. 5:9 - 7:8), that he understood the charges against him and the penalties to which he might be subject after pleading guilty, (Nov. 10, 2009 Tr. 7:9 - 11:25), and that he understood the plea agreement into which he had entered, (Nov. 10, 2009 Tr. 12:1 - 13:7).

The Court then asked the Defendant whether "anyone [had[ offered [him] any inducements or threatened [him] or forced [him] to either plead guilty or to enter into the plea agreement[,]" to which the Defendant replied no. (Nov. 10, 2009 Tr. 13: 8-11.) Then, after the Defendant recounted his actions and allocuted to his crime, (Nov. 10, 2009 Tr. 13:15 - 16-20), and the Assistant United States Attorney summarized the evidence that the Government would present were the case to go to trial, (Nov. 10, 2009 Tr. 16:21 - 17:10), the Court asked the Defendant whether he was "pleading guilty voluntarily and of [his] own free will[,]" to which he replied "Yes, your Honor." (Nov. 10, 2009 Tr. 17: 17-19.)

With the exception of the Defendant's belated assertion of innocence, these factors weigh heavily against the Defendant. Accordingly, the Court finds that there is no fair and just reason to justify the withdrawal of Defendant Muto's guilty plea.

### III. CONCLUSION

For the foregoing reasons, the Defendant's Motion to Vacate his Guilty Plea is DENIED. The Defendant was informed at his plea that sentencing arguments, if any, were to be submitted to Chambers by February 23, 2010. However, instead of submitting timely written arguments, in an undated letter received by the Court on March 2, 2010, the Defendant requested an adjournment of the sentencing date to permit him to address in writing "issues raised in the government's [sentencing] brief . . . [and] issues in the PSI which [he] believe[d] are best answered in a written brief." Although the Court granted this request, instead of submitting the proposed sentencing arguments, the Defendant filed the instant frivolous Motion to Vacate his Guilty Plea.

Accordingly, the Defendant shall file with the Court and serve on the Government a sentencing submission containing substantive, detailed information and arguments, if any, within 10 days of the date of this Order. Failure to do so <u>shall</u> constitute a waiver of such arguments and information at the time of sentencing. There shall be no extensions. The date for sentencing in this matter remains adjourned, <u>sine die</u>.

SO ORDERED

DATED:   New York, New York

　　　　June 11, 2010

_Deborah A. Batts_
DEBORAH A. BATTS
United States District Judge

13